UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CURTISS KIMBALL,<br><br>                      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                      Defendant. | Case No. 20-CV-871-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

Curtiss Kimball ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) in which he requests that this Court review and remand the Commissioner of Social Security's (the "Commissioner") denial of his claim for social security disability benefits. (Docket #1). The parties have submitted their briefs regarding Plaintiff's complaint, as well as the administrative transcript, and the Court has reviewed the same. (Docket #13, #14, #16, #17). For the reasons explained in the balance of this Order, the Court reverses in part the Commissioner's decision and remands the matter to the Social Security Administration (the "SSA") for further proceedings.

**2.    BACKGROUND**

**2.1    Legal Framework for Social Security Disability Claims**

To be eligible for disability benefits under the Social Security Act (the "Act"), the SSA must deem a claimant to be "disabled." 42 U.S.C. § 423(a). In most cases, to determine whether a claimant is disabled within the meaning of the Act, an administrative law judge ("ALJ") gathers evidence,

holds a hearing, takes testimony, and performs a five-step legal evaluation of the claim. 20 C.F.R. § 404.1520. Specifically, an ALJ must determine whether (1) the claimant is engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable physical or mental impairment"; (3) the claimant's impairment met or equaled a listed impairment in the appendix of the regulation (the "Listing"); (4) the impairment prevents the claimant from performing his past relevant work in light of his residual functional capacity ("RFC"); and (5) the claimant, considering his age, education, work experience, and RFC, can still perform another job that is available in the national economy. *Id.*

A claimant's RFC is an assessment of a claimant's "maximum work capability." *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). According to Social Security Ruling ("SSR") 96-8p, RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities" in a work setting for eight hours per day, five days a week, or an equivalent work schedule. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).[1] It entails "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. A claimant bears the burden of proof in the first four steps of the evaluation. *Young v.*

---

[1]The SSA publishes SSRs that "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). "These rulings represent precedent[ial] final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." *Id.*

*Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform given his impairments and RFC. *Id.*

### 2.2 Factual Background

Plaintiff is a fifty-four-year-old former auto mechanic who suffers from, *inter alia*, degenerative disc disease and spinal stenosis. (Docket #13-3 at 30; #13-10 at 7, 20; #13-12 at 121–22). Between 2013 and 2018, Plaintiff had four surgeries on his spine. Specifically, in 2013, Drs. DeWitt and Burkett performed surgery on Plaintiff's lumbar spine. (Docket #13-3 at 26; #13-10 at 20). After experiencing pain in his right hand, left arm, neck, back, and left leg, Plaintiff underwent another operation on his lumbar spine. (Docket #13-3 at 26; #13-12 at 123; #13-13 at 8–9). Dr. Kenneth Reichert performed this operation in March 2016. (Docket #13-13 at 8). Months later, Dr. Reichert operated on Plaintiff's cervical spine. (Docket #13-3 at 26; #13-13 at 35–36). Most recently, in November 2018, Dr. Reichert operated on Plaintiff's cervical spine for a second time. (Docket #13-3 at 27; #13-18 at 87). Notwithstanding his prior operations, Plaintiff still experienced pain. In April 2019, Plaintiff visited his general physician, Dr. David Maruska, and complained of "ongoing left hip and back pain which began after a few falls on the ice this winter." (Docket #13-18 at 84).

In March 2017, Plaintiff filed an application for disability insurance benefits, in which he alleged that his disability began on July 21, 2016. (Docket #13-3 at 20). After his claim was denied, both initially and again on reconsideration, Plaintiff filed a written request for a hearing. (*Id.*) On April 16, 2019, Administrative Law Judge Edward P. Studzinski ("the ALJ") held a hearing during which Plaintiff amended the date of his onset of disability from July 21, 2016 to July 18, 2017. (*Id.* at 20, 47).

After the hearing, the ALJ issued his decision as to Plaintiff's claim. (*See id.* at 17–32). The ALJ determined that Plaintiff had not engaged in substantial gainful activity from the amended onset date, satisfying his burden at step one. (*Id.* at 23). The ALJ also determined that Plaintiff had satisfied his burden at step two because Plaintiff's degenerative disc disease constituted a severe impairment. (*Id.*) The ALJ found that Plaintiff had the non-severe impairments of congestive heart failure and obesity. (*Id.*) At step three, the ALJ determined that Plaintiff's degenerative disc disease did not meet or medically equal the severity of one of the impairments listed in the Listing. (*Id.* at 23–24).[2]

Next, the ALJ determined Plaintiff's RFC, as follows:

> [Plaintiff] has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time he is able to sit, stand, or walk throughout an eight-hour workday. The vast majority of lifting required should be performed between the knees and shoulders. The claimant needs to alternate his position between sitting, standing, and walking for no more than one or two minutes out of every half hour. While doing so, he would not need to be off task. He can frequently operate foot controls. He is able to ambulate effectively, but should not be required to perform more than minimal ambulation on uneven surfaces. The claimant can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, balance, crouch, and crawl but he can never climb ladders, ropes, or scaffolds. He should not perform repetitive rotation, flexion, or extension of his neck or trunk. He can occasionally reach overhead with either arm, but can bear only minimal weight while doing so. The claimant can perform find [sic] and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torqueing [sic].

---

[2] At the hearing, Plaintiff did not argue that his impairment met or equaled an impairment in the Listing. (Docket #13-3 at 45).

(*Id.* at 24). Based on this RFC, the ALJ determined that Plaintiff could not perform his past relevant work as an auto mechanic. (*Id.* at 30). However, at the fifth step, the ALJ determined that, in consideration of Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, there were "jobs that exist in significant numbers in the national economy that [Plaintiff] could perform . . . ." (*Id.* at 31). Therefore, the ALJ ultimately held that Plaintiff was not disabled from July 18, 2017, through July 29, 2019, the date of the ALJ's decision. (*Id.* at 31).

Thereafter, Plaintiff requested review of the ALJ's decision to the SSA Appeals Counsel. The Appeals Counsel denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 8). Now before this Court is Plaintiff's complaint, in which he appeals the ALJ's decision on the following grounds: (1) the ALJ's credibility findings as to Plaintiff were not supported by substantial evidence; (2) the ALJ failed to conduct a pain assessment as to Plaintiff's lumbar and cervical spine surgeries; (3) the ALJ erred in assessing the weight afforded to the opinions of Plaintiff's physician, Dr. Maruska; and (4) the ALJ erroneously weighed the opinions of two state agency doctors, Drs. Khorshidi and Fowler (the "State Agency Doctors").

3.  **LEGAL STANDARD**

A district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). The Act provides that a district court may affirm, modify, or reverse the decision of the Commissioner and remand the cause for a rehearing. *Id.* However, the statute also states that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A court will "uphold the Commissioner's decision if it is supported by

substantial evidence and is free of legal error." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). A court determines whether the decision is supported by substantial evidence by reviewing the entire record, but it cannot substitute its judgment for that of an ALJ by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Jens*, 347 F.3d at 212. "Although this standard is generous, it is not entirely uncritical . . . ." *Steele*, 290 F.3d at 940. A court must look to whether an ALJ articulated an "accurate and logical bridge from the evidence to his [or her] conclusion" that the court can follow. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Further, an ALJ may not "cherry pick" from the medical records in reaching his or her decision. *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016). Ultimately, the Court must remember that "it is not intended to be a rubber-stamp on the Commissioner's decision." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

4. **ANALYSIS**

    4.1 **The ALJ's Credibility Findings as to Plaintiff**

       4.1.1 **Inconsistent Testimony as to Plaintiff's Ability to Walk**

According to the ALJ, Plaintiff's "testimony contained notable inconsistencies compared to the medical evidence of record." (Docket #13-3 at 25). The ALJ found that, notwithstanding Plaintiff's testimony that he "had trouble walking without tripping or falling," the evidence indicated that Plaintiff "ambulated with a normal gait." (*Id.*) (citing Docket #13-18 at

Page 6 of 20
Case 2:20-cv-00871-JPS   Filed 09/16/21   Page 6 of 20   Document 18

19). The ALJ acknowledged that in 2017, Plaintiff's foot slipped one time during a step test but noted that the Plaintiff did not have "loss of balance." (*Id.*) (citing Docket #13-16 at 52). The ALJ considered that Plaintiff fell once in September 2017 but found that "there was no evidence that it was a recurring problem." (*Id.*) (citing Docket #13-17 at 7). He also noted that, while Plaintiff "reportedly fell on ice during the winter months," Plaintiff requested that Dr. Maruska prescribe Plaintiff a cane, as opposed to Dr. Maruska recommending Plaintiff use a cane based on Dr. Maruska's findings. (*Id.*) (citing Docket #13-18 at 84, 86).

The Court distills Plaintiff's argument as follows: the ALJ's findings regarding Plaintiff's gait are not inconsistent with Plaintiff's testimony regarding his ability to walk because one's gait is different from one's ability to walk. (*See* Docket #14 at 12–13). Thus, Plaintiff's testimony is not inconsistent with the evidence in the medical record. In other words, the record is without substantial evidence to support the ALJ's finding that some of Plaintiff's testimony regarding his ability to walk diminished Plaintiff's credibility. (*Id.*) According to Plaintiff, the ALJ has conflated Plaintiff's "gait" and "ability to walk" to manufacture inconsistencies between the medical record and Plaintiff's testimony. (*See, e.g., id.* at 13) ("First, the reason [Plaintiff] had trouble walking was the nerve damage in his left leg, something that would not readily impact gait which is generally affected by pain.").

Plaintiff's attempt to differentiate between his ability to walk and his gait is unavailing, as "gait" is defined as "a manner of walking or moving

on foot."[3] *See Gibbons v. Saul*, 801 F. App'x 411, 416 (7th Cir. 2020) (upholding the ALJ's finding that a physician's "extreme limitation[]" that the claimant avoid walking short distances was "contradicted by evidence of [claimant's] consistently normal gait and ability to walk without a cane or other assistive device"); *Llyod v. Berryhill*, 682 F. App'x 491, 497 (7th Cir. 2017) (finding that a doctor's determination that a claimant had "a normal gait and posture . . . undercut any serious limitations on walking").

With the foregoing in mind, the Court looks to whether the ALJ articulated an "accurate and logical bridge" to support his finding that Plaintiff's testimony was inconsistent with the medical record. *Clifford*, 227 F.3d at 872. Moreover, the Court can disturb the ALJ's credibility determination as to Plaintiff "only if Plaintiff can show that it was 'patently wrong,'" i.e., "the ALJ's decision lacks any explanation or support." *Corey Z. v. Saul*, Case No. 18 CV 50219, 2019 WL 6327427, at *5 (N.D. Ill. Nov. 26, 2019) (quoting *Elder*, 529 F.3d at 413–14).

Throughout the record, Plaintiff repeatedly indicates that he has trouble walking. (*See e.g.*, Docket #13-8 at 25–26, 63, 125–26, 138). Moreover, it appears that, in March 2019, Dr. Maruska found that Plaintiff needed an "SE Cane" because of Plaintiff's "[p]oor balance due to left leg numbness." (Docket #13-17 at 88.). Notably, Dr. Maruska's comment predates Plaintiff's "request[] [for] an order for his lawyer (disability case) stating that he needs to use a cane on uneven surfaces." (Docket #13-18 at 84).

The Commissioner responds that the ALJ reasonably considered the objective medical evidence when determining that such evidence

---

[3] *Gait*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/gait (last visited Sept. 16, 2021).

undermined (to an extent) Plaintiff's subjective claims. The Court agrees. In addition to the previously described references to Plaintiff's normal gait in the record, the ALJ references Plaintiff's medical records to support his finding that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Docket #13-3 at 25). Throughout his decision, the ALJ points to additional medical evidence suggesting that Plaintiff had a normal gait throughout the course of his treatment. (*See, e.g.,* Docket #13-10 at 9; #13-13 at 75, 78; #13-15 at 8; #13-18 at 19). Moreover, the ALJ noted that, notwithstanding Plaintiff's claim of "worsening symptoms" and pain that was not improving, Plaintiff's station was "steady" and his "gait [was] tandem." (Docket #13-3 at 27) (citing Docket #13-15 at 7–8). Therefore, the Court finds that the ALJ's credibility finding was not patently wrong and that the ALJ provided adequate explanations and support for his determination as to Plaintiff's credibility on this issue.[4]

---

[4] Plaintiff also faults the ALJ for relying on Plaintiff's "lack of treatment" for Plaintiff's left-leg numbness, which, per Plaintiff's doctor, was likely caused by scar tissue, and thus, was not treatable. (*See* Docket #14 at 13). An ALJ cannot "find an individual's symptoms inconsistent with the evidence in the record on [the basis of the individual's lack of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) (hereinafter "SSR 16-3p"). Moreover, the ALJ may consider the possibility that "[a] medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual." *Id.* at *9–*10. Certainly, it would be improper for the ALJ to base his adverse credibility determination on Plaintiff's lack of treatment "without inquiring into [his] reasons for doing so." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). However, there is evidence in the record that the ALJ inquired as to Plaintiff's lack of treatment for leg pain after mid-2017. (Docket #13-3 at 50–51).

### 4.1.2 Plaintiff's Daily Activities

The ALJ recounted Plaintiff's testimony that Plaintiff "dr[ove] with children in the car," which suggested that "he is able to be active enough to help them into the car if needed, make sure their seatbelts are buckled, pay attention to the road, use his upper and lower extremities to press the pedals and manipulate the steering wheel." (Docket #13-3 at 25–26). Finally, the ALJ noted that, although Plaintiff testified that he had to nap one to two times per day, "there is no medical evidence supporting that [Plaintiff] needs to nap." (*Id.* at 26).

Plaintiff argues that "[t]he ALJ, however, failed to recognize that such activities do not necessarily equate with the ability to sustain full-time, competitive employment." (Docket #14 at 14). Surely, "[a]n ALJ may not equate activities of daily living with those of a full-time job." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (citing *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016)). However, "an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Id.* (citing 20 C.F.R. § 404.1529(a), (c)(3)). Further, it is not improper for an ALJ to look to a claimant's daily-living activities when assessing credibility. *Id.* at 593; *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (noting that it was acceptable for the ALJ to "use[] [the claimant's] reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

Here, the ALJ relied on Plaintiff's daily-living activities when assessing Plaintiff's credibility as to Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. (Docket #13-3

at 25–26). Later, the ALJ also notes that Plaintiff had been able to mow his lawn, remove snow, and repair a small engine. (*Id.* at 27–28). However, the ALJ recognized that Plaintiff did not perform such activities as "substantial gainful activity," but, rather, that such activities "suggest[ed] that [Plaintiff] retained a certain level of functional ability." (*Id.* at 28). Seventh Circuit case law, as well as the applicable regulations, make clear that the ALJ's reliance on Plaintiff's daily-living activities in this manner was not improper. Thus, the Court will not disturb the ALJ's credibility determination of Plaintiff on this point.

### 4.2 The ALJ's Pain Assessment of Plaintiff

Plaintiff also claims that the ALJ failed to make a pain assessment regarding Plaintiff's lumbar and cervical spine surgeries. (*See* Docket #14 at 14–15, Docket #17 at 10). To be sure, an ALJ must evaluate the impact of one's pain on his or her RFC. 20 C.F.R. § 404.1529(d)(4). In doing so, an ALJ must first "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Next, an ALJ must "evaluate the intensity and persistence of . . . symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at 4. Plaintiff argues that the ALJ failed to recognize Plaintiff's spine surgeries in 2013 and 2016 as impairments that could cause pain. (Docket #14 at 15). Plaintiff then cites to instances in the record where Plaintiff complained of pain after those surgeries. (*Id.*)(citing Docket #13-14 at 18–19, 28).

However, the ALJ acknowledged that Plaintiff experienced pain after each of his spine surgeries. First, the ALJ noted that after Plaintiff's 2013 procedure, Plaintiff "reported numbness in two of his fingers."

(Docket #13-3 at 26). Further, the ALJ recognized that Plaintiff "testified that he had two surgeries in his lower back that made his pain worse . . . ." (*Id.* at 25). Moreover, the ALJ noted that Plaintiff experienced, albeit improved, pain after his surgeries in 2016. (*Id.* at 26). Although Plaintiff contends that the ALJ also disregarded Plaintiff's 2018 surgery as something that could have caused Plaintiff pain, the ALJ noted that Plaintiff complained of ongoing left hip and back pain after that operation. (*Id.* at 28). It is evident that, throughout the ALJ's decision, he considered that Plaintiff experienced postoperative pain and that such considerations informed the ALJ's determination as to Plaintiff's RFC. Again, the Court will not disturb the ALJ's decision on this ground.

### 4.3 The ALJ's Consideration of Medical Opinions

Next, Plaintiff challenges the ALJ's consideration of the medical opinions that informed his determination of Plaintiff's RFC. An ALJ is not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and . . . prior administrative medical findings in [the claimant's] case record." *Id.* § 404.1520c(b). "The most important factors [an ALJ] consider[s] when . . . evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . ." *Id.* § 404.1520c(a). When evaluating the "supportability" of a medical source's medical opinion or prior administrative finding, an ALJ considers the relevance of "the objective medical evidence and supporting explanations" that the medical source presents to support his or

her opinions or findings. *Id.* § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented . . . the more persuasive the medical opinion or prior administrative findings will be." *Id.* Similarly, a medical opinion or administrative finding will have persuasive value to an ALJ if it is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

Additionally, when evaluating a medical opinion or prior administrative medical finding, an ALJ must also consider the medical source's relationship with the claimant. *Id.* § 404.1520c(c)(3). Specifically, an ALJ evaluates the frequency and nature of the claimant's examinations with the medical source, as well as the length, purpose, and extent of the treatment relationship between the medical source and the claimant. *Id.* § 404.1520c(c)(3)(i)–(v). An ALJ must also consider the specialization of the medical source, as the opinion of a medical source "who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her . . . specialty" than a medical source who is not a specialist in the relevant area. *Id.* § 404.1520c(c)(4). Finally, an ALJ "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5). Although an ALJ must consider these factors, he or she is "not required to [] explain" his or her consideration of the same. *Id.* § 404.1520c(b)(2). However, an ALJ must "explain how [he or she] considered the

Page 13 of 20
Case 2:20-cv-00871-JPS    Filed 09/16/21    Page 13 of 20    Document 18

supportability and consistency factors" for a medical source's opinion or prior administrative finding. *Id.*

### 4.3.1 Dr. Maruska's Opinions

Plaintiff argues that the ALJ failed to evaluate Plaintiff's doctor's, Dr. Maruska, opinions in accordance with the factors outlined in § 404.1520c.[5] The ALJ summarized Dr. Maruska's findings as stated in the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" from July 18, 2017. (Docket #13-3 at 29) (citing Docket #13-14 at 9–12). The ALJ wrote that Dr. Maruska's opinion was "unpersuasive, unsupportable, and generally inconsistent with the medical record" because it appeared to be

---

[5] Notably, the Commissioner's new regulations, found at 20 C.F.R. § 404.1520c, governing how the SSA considers and articulates medical opinions and prior administrative findings, apply to claims filed on or after March 17, 2017. Therefore, the ALJ must analyze Plaintiff's claims pursuant to this new regulatory scheme, outlined *supra* in Section 4.3. However, the rules in § 404.1527, which require ALJs to "weigh" certain medical sources, apply to claims filed *before* March 17, 2017. Notwithstanding Plaintiff's acknowledgment that the new regulations apply to his claim, Plaintiff avers that the ALJ "erred" by (1) giving weight to the State Agency Doctors and (2) failing to appropriately weigh Dr. Maruska's opinions. (*See, e.g.*, Docket #14 at 15, 21). Although Plaintiff conflates the two regulatory schemes throughout his briefs, it is clear that Plaintiff takes issue with the ALJ's failure to adequately describe why he found Dr. Maruska's and the State Agency Doctors' opinions to be either supported or unsupported and consistent or inconsistent with the record. (*See e.g.*, Docket #17 at 11–14). "Regardless of this new regulatory change, the ALJ's reasoning must still be supported by substantial evidence and free from legal error." *Theresa R. v. Comm'r of Soc. Sec.*, Case No. C20-5705 RAJ, 2021 WL 913039, at *3 (W.D. Wash. Mar. 10, 2021); *see also Inman v. Saul*, Cause No. 1:20-CV-231, 2021 WL 4079293, at *1 (N.D. Ind. Sept. 7, 2021) (noting that an ALJ's decision must be supported by substantial evidence and then evaluating the ALJ's consideration of medical opinions pursuant to § 404.1520c); *Darren M. P. v. Comm'r of Soc. Sec.*, Case No. 20-cv-534-RJD, 2021 WL 3401243, at *1 (S.D. Ill. Aug. 4, 2021) (same); *Maynard v. Saul*, 20-cv-677-wmc, 2021 WL 3362554, at *1 (W.D. Wis. Aug. 3, 2021) (same). Thus, the Court disregards Plaintiff's conflation and proceeds to analyze whether the ALJ's findings as to the doctors' respective opinions are supported by substantial evidence.

"based largely on [Plaintiff's] subjective allegations and the report at [Docket #13-14 at 18–21] that appears to state the claimant's subjective complaints." (*Id.*)

Undoubtedly, Dr. Maruska's opinion relies on Plaintiff's subjective statements. For example, when asked "[w]hat medical/clinical finding(s) support[ed] [his] conclusions" that Plaintiff's ability to sit and push and/or pull is affected by his impairment, Dr. Maruska answers "His report[.]" (Docket #13-14 at 10). Similarly, Dr. Maruska admittedly relied on Plaintiff's report when determining Plaintiff's "manipulative limitations." (*Id.* at 11). Moreover, a comparison of the July 18, 2017 clinic documents (Docket #13-14 at 18–21), which indicate that the purpose of Plaintiff's visit was to complete Plaintiff's disability forms, to Dr. Maruska's opinion suggests that Plaintiff's report and statements informed the bulk of Dr. Maruska's opinion, as opposed to an independent physical evaluation.

It is understandable for an ALJ to question the reliability of a doctor's opinion if it appears that the doctor copied his or her opinions directly from a claimant's self-reported, subjective limitations. *David R. v. Saul*, No. 20-cv696, 2021 WL 1121085, at *5 (N.D. Ill. Mar. 24, 2021); *see also Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (noting that it is appropriate for an ALJ to discount an opinion that is based solely on a claimant's subjective statements). "However, even if a treating physician drafted a limitations statement fully adopting a patient's subjective limitations, this does not relieve the ALJ of the burden of detailing if or how that statement is unsupported by the record." *David R.*, 2021 WL 1121085, at *5. In other words, "[a]n ALJ must do more than state that an opinion is unsupported; he must specify why the opinion was flawed and point to specific conflicts in the record." *Theresa R.*, 2021 WL 913039, at *3. Therefore, the ALJ's

determination that Dr. Maruska's 2017 opinion is both unsupported and inconsistent with the record is insufficient, as it fails to detail how Dr. Maruska's findings are unsupported by the record.

The ALJ's rejection of Dr. Maruska's March 2019 opinion is also insufficient. Again, the ALJ provides a summary of Dr. Maruska's findings as to Plaintiff's limitations. (Docket #13-3 at 30) (citing Docket #13-17 at 87–90). After noting that he accounted for Plaintiff's hand limitations in the RFC, the ALJ stated that he found "Dr. Maruska's opinion generally unpersuasive," and that "the limitations Dr. Maruska opined to are generally unsupportable and inconsistent with the evidence of record, as the record does not support such great limitations." (*Id.*)

Plaintiff avers that "the ALJ improperly rejected the entirety of Dr. Maruska's 2019 opinion because the ALJ disputed the necessity of prescribing a cane to [Plaintiff], and that it was "improper to reject the entire opinion because of one portion being deemed inconsistent or unsupported." (Docket #17 at 13). However, it appears that the ALJ rejected Dr. Maruska's entire 2019 opinion as unpersuasive and inconsistent with the record. Although he provided his rationale as to why he found that Dr. Maruska's prescription for a cane was unsupportable and accounted for Dr. Maruska's opinion as to Plaintiff's hand-limitations in the RFC, the ALJ failed to adequately detail how "Dr. Maruska's limitations [were] generally unsupportable and inconsistent with the evidence of record, as the record does not support such great limitations." (Docket #13-3 at 30). Without this information, the Court finds that the ALJ's determination as to Dr. Maruska's opinions is not supported by substantial evidence. Therefore, the Court finds that the ALJ must reevaluate Dr. Maruska's opinions and provide sufficient support in the record to substantiate his findings.

### 4.3.2 The Opinions of the State Agency Doctors

Finally, Plaintiff argues that it was improper for the ALJ to find the opinions of the State Agency Doctors to be "generally supportable, consistent with the evidence, and persuasive." (Docket #13-3 at 29). One state agency doctor, Dr. Khorshidi, issued an opinion as to Plaintiff's RFC in June 2017, finding that Plaintiff was "capable of light duty exertion." (Docket #13-4 at 8). On reconsideration in September 2017, the second state agency doctor, Dr. Fowler, affirmed Dr. Khorshidi's initial assessment. (*Id.* at 21–22).

Plaintiff takes issue with the fact that the ALJ found the State Agency Doctors' opinions to be supportable, persuasive, and consistent without having considered Plaintiff's cervical and lumbar MRI results from 2018. Plaintiff argues that for the ALJ to do so, "the ALJ would have had to assess the meaning and impact of the two MRIs on Plaintiff's condition and work limitations." (Docket #17 at 15–16). In other words, according to Plaintiff, the ALJ erroneously "played doctor." (*Id.* at 16).

Seventh Circuit case law makes clear that an ALJ must submit medical records, such as MRIs, to "medical scrutiny" if such records constitute "new and potentially decisive medical evidence." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). Moreover, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Stage v. Colvin*, 812 F.3d at 1125 (internal quotations and citation omitted). "However, the Seventh Circuit has never held that an ALJ must obtain a new medical opinion whenever the claimant continues to receive treatment; if that were required, 'a case might never end.'" *Sauer v. Saul*, Case No. 19-C-927, 2020 WL 3397406, at *13 (E.D. Wis.

June 19, 2020) (quoting *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017)).

In this case, the ALJ found that the pre-2018 MRI opinions of the State Agency Doctors were consistent with the medical record. (Docket #13-3 at 29). Yet he also "imposed additional limitations on [Plaintiff's] residual functional capacity to account for the later evidence of record considered singly and in combination with the claimant's subjective complaints, and in giving [Plaintiff] the full benefit of the doubt." (*Id.*) Defendant relies on *Sauer*, 2020 WL 3397406, at *13, to support the proposition that the ALJ's inclusion of additional limitations in the RFC "shows that [he] considered the entire record and did not blindly rely on the earlier agency assessments." (Docket #16 at 7–8). Further, Defendant argues that Plaintiff's 2018 MRIs "revealed similar findings to comparison scans" that predated the State Agency Doctors' respective opinions, i.e., that the 2018 MRIs do not constitute new and potentially decisive medical evidence requiring remand. (*Id.* at 8–9).

Plaintiff's 2018 MRIs indicate "degenerative changes" in his lumbar and cervical spines, as well as canal narrowing of his cervical spine. (Docket #13-16 at 67–68, 71–72). To be sure, the Seventh Circuit held that "it was not error for the ALJ" to rely on the opinions of agency physicians that predated two spinal MRIs because the plaintiff "ha[d] not provided any evidence that the reports would have changed the doctors' opinions." *Keys*, 679 F. App'x at 480–81; *see also Sauer*, 2020 WL 3397406, at *14 (quoting *Goins*, 679 F.3d at 680) (noting that it was debatable whether an MRI constituted "'new and potentially decisive medical evidence' requiring remand" because, in part, the plaintiff had not developed an argument that the new scans documented a new condition or otherwise "significant worsening of [the

plaintiff's] previous condition.")). However, unlike in *Sauer*, it is unclear whether the State Agency Doctors reviewed Plaintiff's 2016 MRIs when making their assessments in 2017.

Nevertheless, the Court finds that the ALJ did not provide an "accurate and logical bridge from the evidence to the conclusion" that the State Agency Doctors' opinions were supportable, consistent, and persuasive with the record. *Clifford*, 227 F.3d at 872. Again, the ALJ baldly asserts that these opinions are supportable, persuasive, and consistent, without providing any citations to other parts of the record. Moreover, the Court agrees with Plaintiff's contention that, for the ALJ to find that the State Agency Doctors' opinions were "consistent to the record . . . . the ALJ would have had [to] assess the meaning and impact of the two MRIs on [Plaintiff's] condition and work limitations." (Docket #14 at 22). Essentially, the ALJ states, with little explanation, that he was persuaded by opinions that did not consider Plaintiff's updated medical information. It follows that the ALJ then took it upon himself to consider the import of the 2018 MRIs when crafting Plaintiff's RFC. Therefore, at this juncture, Court directs the ALJ to reevaluate the State Agency Doctors' opinions in accordance with this Order.

5.  **CONCLUSION**

The Court has reviewed the record, the ALJ's decision, and the parties' arguments and concludes that the decision of the Commissioner of Social Security must be reversed in part and remanded for further consideration in accordance with the terms of this Order.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner of Social Security in this matter be and the same is hereby **REVERSED in part** as

stated in the terms of this Order, and this matter be and the same is hereby **REMANDED** to the Commissioner of Social Security pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g);

**IT IS FURTHER ORDERED** that, on remand, the ALJ shall conduct proceedings consistent with this opinion and issue a new decision consistent with all applicable rules and regulations as interpreted in relevant Seventh Circuit case law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge